IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Income Tax

| | | |
|---|---|---|
| MICHAEL D. HOUSE<br>and BETHANNE HOUSE, | ) | |
| | ) | |
| Plaintiff, | ) | TC-MD 210402R |
| | ) | |
| v. | ) | |
| | ) | |
| DEPARTMENT OF REVENUE,<br>State of Oregon, | ) | |
| | ) | |
| Defendant. | ) | **DECISION** |

Plaintiff appealed Defendant's Notice of Assessment dated November 15, 2021, for the

2018 tax year. A trial was held remotely via WebEx on May 11, 2022. Michael and Bethanne

House appeared and testified on their own behalf. Cynthia Dailey (Dailey) and Earl H. Perry

(Perry) also testified on behalf of Plaintiffs. Peggy Ellis and Thomas Prislac appeared on behalf

of Defendant but did not testify. Plaintiffs' Exhibits 1 to 16 and Defendant's Exhibits A to D

were received into evidence without objection.

## I. STATEMENT OF FACTS

Plaintiffs purchased a commercial property in Klamath Falls, Oregon in April 2018.

Plaintiffs intended to renovate the property, and then to rent sections of the space to fledgling

businesses, including Dr. Laura Blevins' (Dr. Blevins) naturopathic primary care clinic,

Wholesome Family Medicine.

The property sat vacant for ten years preceding its purchase and was in a state of disrepair:

the interior walls were covered in old, damaged paint and wallpaper; the ceiling had broken tiles and

required new insulation; the lower half of the walls required new drywall due to flooding, which also

damaged the flooring; and the parking lot needed to be cleaned, resealed, and repainted.

Renovations were completed over a nine-month period. Plaintiffs testified that they completed some of the work themselves, however, most of the work was completed by various contractors whom Bethanne House paid in cash. Plaintiffs did not issue a Form 1099-MISC to any contractor nor did they keep any other records to track their cash expenditures. Plaintiffs subsequently claimed deductions for various renovation expenses, were denied such deductions, and appealed to this court from their Notice of Assessment in 2021.

In effort to explain why Plaintiffs chose to pay exclusively in cash, Michael House testified that he worked as a licensed contractor from 1988 to 2014 and that cash was a common payment method. In addition, Bethanne House testified that paying in cash was common practice to receive a discount in their community.

Plaintiffs presented six invoices as evidence of their renovation work: (1) All Phase Weatherization & Construction, LLC installed ceiling insulation for $3,000; (2) Gamache's Drywall installed drywall for $3,300; (3) Precision Striping cleaned, resealed, and repainted the parking lot for $2,450; (4) Jack Hansen (Hansen), a licensed contractor, installed approximately 400 yards of carpet for $2,767; (5) Michael, an unlicensed contractor, installed vinyl flooring for $3,400; and (6) David, an unemployed individual who Plaintiffs knew from a local church, removed the old wallpaper and repainted the building for $3,250.

Each invoice provided a varying degree of information, some posing as more detailed and accurate records than others. The first three invoices lacked payee signatures acknowledging cash payment. The fourth invoice, Hansen's, failed to provide his contact information, but contained two handwritten notations stating "paid cash" and one handwritten notation stating "paid in full[.]" Each notation stating "paid cash" appeared to be written by a different individual and the notation stating "paid in full" matched the handwriting style of one "paid

cash" notation. The fifth invoice, Michael's, did not include Michael's full name, his contact information, or an accurate description of the work performed—the invoice described the labor performed as "[i]nstall glue down carpet[,]" despite Bethanne House's testimony that Michael installed vinyl flooring rather than carpet. At trial, Bethanne House attributed her failure to request a more accurate record to her "excite[ment] to get the building done." The final invoice, David's, did not contain his last name, contact information, a payment date, a payee signature, and it contained multiple styles of handwriting.

Plaintiffs submitted as exhibits, letters authored by Dr. Blevins, Dailey, and Geneva Krueger for the court's consideration. Dr. Blevins' letter attested to the original, poor condition of the property, that renovations were completed, and that she "understand[s Plaintiffs] paid for much of the work in cash[.]" Dailey, office manager of Wholesome Family Medicine during the time of renovations, wrote that she personally observed the original condition of the building, that she made biweekly check-ins to the property during renovations, and noted the significant improvement of the condition of the building after renovations were completed. Krueger, an individual who was also employed by Wholesome Family Medicine during the time of the renovations, wrote that she "personally witnessed the extensive work that was done" and that such work included "ceiling insulation, sheetrock throughout, flooring, vanities, paint, parking lot resurface, plumbing, etc."

During trial, Dailey testified that although she had not witnessed any cash change hands, she knows that none of the contractors had sought payment from the clinic. Perry, a Klamath County Code Enforcement Officer, testified that he had walked through the subject property, found the building was up to code, and verified that there were no mechanic's liens on the property.

To evince that Plaintiffs possessed enough liquid assets to pay for these expenditures, Plaintiffs submitted various bank cash-back receipts from their bank during the years 2016 through 2018 totaling the sum of $51,266.  Plaintiffs also submitted as evidence of the renovations, photographs depicting various areas of the property in both its pre- and post-renovation state.

In late 2019, after Plaintiffs filed their 2018 tax return, Bethanne House found misplaced invoices from the 2018 renovations.  Plaintiffs ultimately decided not to file an amended return claiming additional deductions under the advice of their tax return preparer.  Following an audit of Plaintiffs' 2018 tax return and receipt of a Notice of Deficiency dated June 28, 2021, Plaintiffs offered the Defendant several records and forms of documentation, including the misplaced invoices, to verify their claimed expenses.  Defendant denied certain deductions on a finding that the invoices were insufficient proof and renewed the Notice of Deficiency on November 15, 2021.  Plaintiffs timely appealed.[1]

## II.  ANALYSIS

There are two issues in this case.  The first is whether Plaintiffs presented sufficient evidence to deduct certain renovation expenses for the 2018 tax year pursuant to IRC § 162(a).[2] The second issue is whether, assuming those deductions are allowed, the expenses are immediately deductible pursuant to IRC § 212(2) or must be depreciated over time pursuant to IRC § 167(a).

The legislature intended to "[m]ake the Oregon personal income tax law identical in effect to the provisions of the Internal Revenue Code relating to the measurement of taxable

---

[1] Plaintiffs abandoned their claim all other deductions, including travel expenses, at the beginning of trial and focused only rehabilitation expenses.

[2] Internal Revenue Code (IRC).

income of individuals, * * * modified as necessary by the state's jurisdiction to tax and the revenue needs of the state[.]" ORS 316.007(1).[3] In general, terms have "the same meaning as when used in a comparable context in the laws of the United States relating to federal income taxes, unless a different meaning is clearly required or the term is specifically defined * * *." ORS 316.012. On the issues presented, Oregon has made no relevant modifications, so the court looks to the IRC and its administrative and judicial interpretations. *See* ORS 316.032.

A. *Plaintiffs' Deductions for Renovation Expenses*

Plaintiffs argue they are entitled to deductions denied by Defendant for business expenses related to their 2018 renovations. Defendant does not dispute that the renovations occurred; rather, it argues that the invoices and evidence of cash payments are inadequate to substantiate Plaintiffs' claimed deductions.

Under IRC section 162, there "shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business." "Whether an expense is deductible under [IRC] section 162 is a question of fact to be decided on the basis of all the relevant facts and circumstances." *Adams v. Comm'r*, 105 TCM (CCH) 1029, WL 135103 at *9 (2013).

Deductions are "a matter of legislative grace" and taxpayers bear the burden of proving their entitlement to the deductions claimed. *INDOPCO, Inc. v. Comm'r*, 503 US 79, 84, 112 S Ct 1039, 117 L Ed 2d 226 (1992). Plaintiffs bear the burden of proof and must prove their case by a preponderance of the evidence. *See* ORS 305.427. "Preponderance of the evidence means the greater weight of evidence, the more convincing evidence." *Feves v. Dept. of Rev.*, 4 OTR 302, 312 (1971). "[I]f the evidence is inconclusive or unpersuasive, the taxpayer will have failed to meet his

---

[3] The court's references to the Oregon Revised Statutes (ORS) are to 2017.

burden of proof * * * ." *Reed v. Dept. of Rev.*, 310 Or 260, 265, 798 P2d 235 (1990).  Taxpayers must keep and be prepared to produce "any books, papers, records or memoranda bearing upon [any] matter required to be included in the return[.]"  ORS 314.425(1); *see also* IRC § 6001.

Here, the Department does not contest that the renovation expenses at issue, if proved, were ordinary and necessary business expenses.  The Department merely contests whether there is sufficient proof to substantiate the expenses.  The evidence submitted into the record are Plaintiffs' testimony, third-party testimony, letters, several invoices, before-and-after photographs, and bank cash-back receipts.

To prove that the renovations did, in fact, occur, Plaintiffs presented letters attesting that the renovations occurred and substantially improved the conditions of the property and Plaintiffs provided photographs depicting the condition of the property before and after renovations. While the court accepts both the letters and the photographs as evidence that the renovations occurred, neither the letters nor the photographs considered alone are sufficient evidence to substantiate that Plaintiffs incurred cash expenses.  In addition, Plaintiffs credibly testified that Bethanne House paid for the services in cash and that she did so, at least in part, because it was common practice in the construction industry to pay with cash in exchange for a cash discount. Although the court finds Plaintiffs' testimony to be credible, the court is unpersuaded that this evidence, on its own, substantiates that Plaintiffs incurred cash expenses.  While the invoices provided varied in in their degree of detail, none of the invoices had payee signatures verifying receipt of cash.  Thus, the court finds that the invoices, on their own, do not contain sufficient information to substantiate that Plaintiffs incurred their claimed cash expenses.

Courts may look to bank statements and cancelled checks as corroborative, contemporaneous evidence of cash payments.  See *Avila v. Dept. of Rev.*, TC-MD 190268R,

2020 WL 2467116 at *2 (Or Tax M Div May 13, 2020); see also *Shirley v. Dept. of Rev.*, TC-MD 130451D, 2014 WL 811543 at *3 (Or Tax M Div Mar 3, 2014). Here, the court struggles to accept Plaintiffs' bank cash-back receipts as they span a general period of three years; they are far from contemporaneous. Plaintiffs did not connect any specific expenditure with a specific withdrawal, but rather made a general claim that they had enough cash on hand at the time they paid for each expense. This is different from a bank statement where a withdrawal may reasonably reflect a specific cash amount for a specific cash expense on a specific date. Despite these differences, the court finds Plaintiffs more likely than not had enough cash on hand to pay for their claimed expenses.

Individually, each item of evidence is unpersuasive to show that Plaintiffs incurred the renovation expenses claimed. However, collectively, the court finds that Plaintiffs renovated the subject property and it is more likely than not that they incurred cash expenses to do so.

Generally, if an expense is deductible, but the taxpayer is unable to fully substantiate it, the court is permitted to make an estimation of the allowable amount. See *Cohan v. Comm'r*, 39 F2d 540, 543-44 (2d Cir. 1930). However, that estimate must have a reasonable evidentiary basis. See *Vanicek v. Comm'r*, 85 TC 731, 742-43 (1985). The court is not required to accept a taxpayer's unsubstantiated testimony. See *Hough v. Comm'r*, 91 TCM (CHH) 943, WL 784856 at *1 (2006). "Taxpayers must substantiate claimed deductions with evidence such as invoices or receipts that establish that the expenses were actually incurred." *Lyseng v. Comm'r*, 102 TCM (CCH) 280, 2011 WL 4389644 at *3 (US Tax Ct).

In consideration of the invoices provided, the court is persuaded that Plaintiffs incurred and are allowed a deduction in the amount of $3,250 for painting expenses, $3,000 for ceiling

/ / /

expenses, $3,300 for drywall expenses, $2,450 for parking lot expenses, $2,767 for carpet expenses, and $3,400 for vinyl flooring expenses.

B. *Of the Deductions Allowed, Must They Be Deducted Under IRC § 212(2) or Depreciated Under IRC § 167(a)?*

Taxpayers may deduct "all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business." IRC § 162(a). Repairs to property may be deductible under section 162(a) so long as they "(i) keep the property in an ordinarily efficient operating condition and (ii) do not appreciably prolong its life or materially add to its value." *Oglesby v. Comm'r*, 101 TCM (CCH) 1430 (2011), 2011 WL 1598728 at *4 (US Tax Ct); *see also* Treas Reg § 1.162—4. However, for permanent improvements or betterments made to increase the value of any property, those amounts must be capitalized and depreciated in accordance with section 167. *See* IRC § 263(a)(1); *see also* Treas Reg § 1.263(a)–3; *see also* Treas Reg § 1.162—4.

Section 167 provides that "a reasonable allowance for the exhaustion, wear and tear (including a reasonable allowance for obsolescence)-- (1) of property used in the trade or business, or (2) of property held [by the taxpayer] for the production of income" shall be allowed as a depreciation deduction. IRC § 167(a). Individuals may deduct "all the ordinary and necessary expenses paid or incurred during the taxable year * * * for the management, conservation, or maintenance of property held for the production of income[.]" IRC § 212.

It is for the court to make a factual determination whether an expense is a deductible repair or an expenditure that must be capitalized. *Gibson & Assocs., Inc. v. Comm'r*, 136 TC 195, 233 (2011). Generally, an expenditure made to an item as part of a general plan of rehabilitation, must be capitalized, even if, standing alone, the item could be classified as a

/ / /

deductible repair. *Niv v. Comm'r*, 105 TCM (CCH) 1512 (2013), 2013 WL 1163752 at \*19–\*20 (US Tax Ct).

In *Churchill Farms, Inc.*, a taxpayer undertook a project to renovate several assets which had been deteriorating for numerous years, including a caretaker's dwelling, a boathouse, some wharves, and a storage building. *Churchill Farms, Inc. v. Comm'r*, 28 TCM (CCH) 990 (1969), 1969 WL 1189 (US Tax Ct). The taxpayer sought to deduct $9,638.38 for construction work performed which included the installation of plumbing facilities to the caretaker's building, new windows for the caretaker's building, a complete rebuild of the wharves, and more. *Id*. The court held that because the structures had become virtually unusable and "[t]he expenditures to rebuild them were incurred to place, rather than to keep, them in an ordinarily efficient condition[,]" the expenditures must be capitalized. *Id*. The parties stipulated that the costs should be depreciated. *Id*.

Here, Plaintiffs executed a substantial renovation of the commercial property that they purchased in unusable condition. Like the expenses incurred in *Churchill Farms, Inc.*, Plaintiffs incurred expenses not to *keep* the commercial property at issue in an ordinarily efficient condition, but to *place* the property in an ordinarily efficient condition. The allowed deductions, therefore, must be depreciated over time in accordance with IRC § 167.

C. *Costs and Disbursements*

Plaintiffs timely filed a request for costs and disbursements in the sum of $375.31. The Magistrate Division has discretionary authority under ORS 305.490(2) to award costs and disbursements to the prevailing party. *Wihtol v. Dept. of Rev.,* 21 OTR 260, 267-68 (2013). Here, Plaintiffs are the prevailing party on some of the deductions sought in their complaint, and after abandoning some of their claims at the start of trial, prevailed on the deductions sought

during trial. However, because Plaintiffs prevailed on only some of their claimed deductions and failed to timely produce the invoices and pictures that they submitted as trial exhibits to Defendant, the court declines to award costs to Plaintiffs.

III. CONCLUSION

After careful consideration of the evidence presented, the court finds that the Plaintiffs have substantiated some of their claimed business deductions for the 2018 tax year. Now, therefore,

IT IS THE DECISION OF THIS COURT that, for the 2018 tax year, Plaintiff is allowed a deduction in the following amounts: $3,250 for painting expenses, $3,000 for ceiling expenses, $3,300 for drywall expenses, $2,450 for parking lot expenses, $2,767 for carpet expenses, and $3,400 for vinyl flooring expenses.

IT IS FURTHER DECIDED that the allowed deductions must be depreciated under IRC § 167.

IT IS FURTHER DECIDED that Plaintiffs' request for costs and disbursements is denied.

Dated this \_\_\_\_ day of August 2022.

RICHARD DAVIS<br>
MAGISTRATE

***If you want to appeal this Decision, file a complaint in the Regular Division of the Oregon Tax Court, by <u>mailing</u> to: 1163 State Street, Salem, OR 97301-2563; or by <u>hand delivery</u> to: Fourth Floor, 1241 State Street, Salem, OR.***

***Your complaint must be submitted within <u>60</u> days after the date of this Decision or this Decision cannot be changed. TCR-MD 19 B.***

***This document was signed by Magistrate Richard Davis and entered on August 26, 2022.***